IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DISABILITY RIGHTS OHIO,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-906 |
| | : | |
| v. | : | Judge Watson |
| | : | Magistrate Judge Deavers |
| | : | |
| **THE BUCKEYE RANCH, INC.,** | : | |
| | : | |
| Defendant. | : | |

## MOTION OF DEFENDANT THE BUCKEYE RANCH, INC. FOR TEMPORARY RESTRAINING ORDER

Now comes Defendant The Buckeye Ranch, Inc. and moves this Court pursuant to Civ. R. 65 and Local R. 65.1 for preliminary injunctive relief and a temporary restraining order against Plaintiff Disability Rights Ohio ("DRO") prohibiting it from unauthorized access to certain of its records and the youth that reside at The Buckeye Ranch. DRO's requests exceed the boundaries of the authorized access provided by the Protection and Advocacy for Individuals with Mental Illness Act under which DRO claims the right of access. Such activities pose irreparable injury to a fragile and vulnerable population that is impossible to calculate. The bases for this Motion are set forth in the memorandum attached hereto.

Respectfully submitted,

**ISAAC WILES BURKHOLDER
& TEETOR, LLC**

Maribeth Meluch     (0055903)

1

mmeluch@isaacwiles.com
Isaac Wiles Burkholder & Teetor, LLC
Two Miranova Place, Ste 700
Columbus, Ohio 43215
p. 614.221.2121
f. 614.365.9516

## MEMORANDUM

### I. INTRODUCTION

The Buckeye Ranch offers treatment and support services to countless children and families in Ohio who struggle with emotional, behavioral and mental health issues. It is Buckeye Ranch's mission to restore hope and to provide healing solutions for these children and their families, through a comprehensive treatment program and continued support. As one of Ohio's largest private, not-for-profit mental health agencies dedicated to youth, The Buckeye Ranch touches the lives of more than 4,800 children and families each year. With a wide array of programs and services, The Buckeye Ranch is able to provide high quality, individualized care that focuses on the strengths of each child and family.

The Buckeye Ranch offers a residential program at its Main Campus in Grove City, which routinely provides care for up to 90 children on a daily basis. It has been serving Ohio children for the past 57 years. DRO has requested records related to several incidents involving physical restraints that the Buckeye Ranch self-reported to the State of Ohio as obligated pursuant to R.C.2151.421. Despite these independent investigations by the State of Ohio and the Counties of Franklin and Hamilton which found no substantiation of abuse or neglect, DRO has begun a campaign to not only obtain records and interviews with the affected children but to conduct a general investigation into the policies and practices of The Buckeye Ranch. That includes a demand to randomly select and interview children residing at The Buckeye Ranch - without prior

parental or guardian consent or even notice. Efforts by The Buckeye Ranch to amicably work with the DRO and obtain consent from the parents and guardians of these minors was refused and met only by its own lawsuit[1].

This motion seeks a temporary restraining order against DRO from obtaining irrelevant records or and conducting randomly selected interviews with the residents of The Buckeye Ranch, all of whom are minors and suffer from mental health disorders, without the consent of a parent or legal guardian. The Buckeye Ranch is not here to hide anything. Rather it is requesting the Court's assistance in assuring that DRO operates under all bounds of the law so that the privacy interests of the children and their families remain protected.

## II.   FACTS[2]

On August 16, 2018, DRO notified The Buckeye Ranch of its intent to interview all of the residents of The Buckeye Ranch at their discretion without obtaining consents from the parents or guardians of those children. This request was preceded by a request for records in July stemming from five incidents (involving four children) which involved physical restraints. Two of these children had already been discharged and were no longer residents. The Buckeye Ranch self-reports allegations of abuse and neglect to the State of Ohio Department of Mental Health in accordance with R.C. 2151.421. The Buckeye Ranch reports all allegations no matter the circumstance. For example, a child may allege "you tried to hurt me." Even without any evidence of physical contact, such allegations are still reported.

As a result of these five incident reports, the State of Ohio and Franklin and Hamilton County independently investigated the incidents. All three investigations found no evidence of abuse or neglect. The reports of these incidents were not made to DRO by an independent

---

[1] *Disability Rights Organization v. The Buckeye Ranch, Inc.*, Case No. 2:18-cv-894, filed August 16, 2018.
[2] As reproduced from the Verified Complaint filed on even date herewith.

3

agency or party, including the parents or the guardians of the children involved. In fact, The Buckeye Ranch is unaware of any reports or complaints concerning The Buckeye Ranch being made directly to the DRO

Regardless, DRO used the reports that The Buckeye Ranch made to other outside and independent agencies as a springboard for a fishing expedition into the policies and practices of the Buckeye Ranch. Under the guise of "probable cause" (which they do not have given the final results of these independent agencies' investigations) the DRO first requested records related to the five incidents at issue. Nevertheless, The Buckeye Ranch produced to the DRO the records of the four children involved including all of the video footage it had of the restraints. The Buckeye Ranch is not legally required to surveil the facility but does so as a means to protect staff and children alike. As this Court is well aware, The Buckeye Ranch houses children who present safety risks in their own homes to themselves and their family members. Thus in an overabundance of caution, The Buckeye Ranch monitors conduct in its residential units through video surveillance. The Buckeye Ranch has already provided the video of the restraints to DRO.

However, DRO was not satisfied with the production of records and has demanded further videos that do not even include the restraints or the affected children. Instead, the video footage that DRO now requests includes children not involved and contains no information relevant to these five incidents. It was not relied upon in the investigation conducted by The Buckeye Ranch. The Buckeye Ranch therefore declined to produce the additional video on the grounds that it was irrelevant and not authorized by applicable law, namely the PAIMI.

On August 16, 2018, DRO next demanded interviews with the four children at 2:30 p.m. DRO provided only several hours' notice that it intended to conduct these interviews. The Buckeye Ranch at first agreed to provide access to the two children who were still residents

subject to their therapy class schedules. However, DRO immediately followed up with additional demands to allow access to any interview any resident that DRO wished. (See Exhibit A, attached hereto.) DRO demanded that such access be made available within the week. The Buckeye Ranch explained to DRO it believed that its position was that DRO needed consent from parents or guardians before it could interview children under the applicable law and regulations. DRO claimed they did not need any such consent. The Buckeye Ranch determined that in order to adequately protect the children and itself given various competing rights of privacy it would request that his Court interpret the applicable federal statutes and regulations before permitting DRO to interview minors without the consent of parents or guardians. Counsel for The Buckeye Ranch notified the DRO and suggested a joint action to the Court to obtain an interpretation of the applicable law. (See Exhibit B, attached hereto.) DRO did not respond. Rather, DRO filed its own Complaint misrepresenting the facts and the position of The Buckeye Ranch.

### III. LAW AND ARGUMENT

The Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI") provides a system whereby a designated agency ("P&A System") is given authority to investigate incidents of abuse and neglect of individuals with developmental disabilities. That authority is not unbridled and does not give the agency carte blanche access to minors and license to conduct a general investigation into possible violations of policy or practice without considerations of the due process and privacy rights of the residents of The Buckeye Ranch.

DRO claims to be Ohio's P&A System. Therefore they are bound by the statute and its accompanying regulations. The authorizing statute, 42 USC § 15043 provides that the P&A System shall have the authority to investigate incidents of abuse and neglect in only two

situations: (i) "if the incidents are reported to the [P&A] System or (ii) "if there is probable cause to believe that the incidents occurred."

In furtherance of their investigations the PAIMI allows the P&A System access to the records "of any individual" who:

    (i)      is a client of the P&A System,
    (ii)     (a) cannot by reason of a mental or physical condition authorize the P&A System to have access, (b) has no legal guardian or for whom the guardian is the State, and (c) for whom a complaint has been received by the P&A System or there is probable cause to believe that such individual has been subject to abuse or neglect, or,
    (iii)    (a) The legal representative has been contacted about a complaint received by the P&A System, (b) has failed or refused to act on behalf of the individual, and (c) there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy.

42 USC §10805(a)(4).

DRO has not established at any time that any of the five incidents met these requirements. They have not provided any indication that any of the four minor children are their "clients." They have not alleged that the child's legal representatives has refused or failed to act on behalf of the child and that the child is in immediate jeopardy. In fact, two of the children no longer reside at Buckeye Ranch. DRO's sole claim for authority is its argument that it has probable cause. Not only does Buckeye Ranch disagree DRO has probable clause, that is not only the showing DRO must make. Under (ii) above, DRO must also demonstrate that the individual is a "client" or has no legal representative other than the State. In the situations with these four children, they all have parents and legal representatives, which to the knowledge of The Buckeye Ranch, no one has contacted.

Furthermore the records to which a P&A Systems has access to under this section are records of an "individual" and not all records of the facility. 42 USC §10806 further defines "records" to include "reports prepared by any staff of a facility rendering care and treatment or reports

6

prepared by any agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." The records requested by DRO, namely video footage taken an hour before and hour after an incident, are not records of an individual nor are they reports as defined in §10806. This video does not even include the affected children. Rather, it includes other residents who are not relevant to these five incidents.

The implementing regulations provide further guidance. 42 CFR § 51.41 repeats the requirements under which the P&A System is entitled to records of an individual. 42 CFR § 51.2 defines "probable cause" as "reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect." Buckeye Ranch does not believe that DRO has a "reasonable ground" for believing that these four individuals are at significant risk of abuse or neglect given that independent investigations have already concluded no abuse or neglect occurred. Further, no report was ever made to DRO. The basis for DRO's requests is the self-reporting done by The Buckeye Ranch to the State of Ohio all of which were investigated at the State and County level. None of these independent agencies substantiated any abuse or neglect.

That is consistent with the court's opinion in *Disability Law Center v. Discovery Academy*, D. Utah, No. 2:07-cv-755, 2010 U.S. Dist. LEXIS 410 (January 5, 2010). In that case, the Disability Law Center sought to interview children of the academy for purposes of analyzing various practices of the Academy. In reliance on the above definition of "probable cause" that court found:

> Further enforcing the requirements of the statute itself, the regulation requires that the probable cause finding be supported by facts pointing to the abuse of a specific individual.

7

>Under PAIMI, the Center becomes the advocate for that individual. The act does not vest the Center with authority to conduct broad based investigations of "general operational misconduct." This conclusion must be reached particularly in a case, such as this one, where the Center acknowledges that the students who may have been the focus of the original concern may no longer be residents of the Academy.

*Id.* at *12.

The court further pointed out that this "probable cause" serves as a constitutionally adequate substitute for a warrant" and therefore the PAIMI must be construed to provide "certainty and regularity in its application." *Id.* at *10.

Likewise in this case, the DRO has not produced any particular facts regarding any specific individual or supporting facts for probable cause. Two of the children no longer reside at the Buckeye Ranch.

The implementing regulations describe "records" to include (i) "individual records" such as those obtained in the course of providing intake, assessment, evaluation, supportive and other services," (ii) reports prepared by the agency charged with investigating abuse, neglect or injury occurring at the facility, which includes "supporting information that was relied upon in creating a report," (iii) discharge planning records, (iv) reports prepared by individuals and entities performing certification or licensure reviews, and (v) information relating to the facility. 42 CFR § 51.41. The video footage is not one of the records identified in 42 CFR §51.41.

DRO also requests access to the Buckeye Ranch facilities and its residents. Buckeye Ranch agrees that DRO is entitled to access but for certain limited purposes and within the authority set forth by the statutes and regulations that govern it. A P&A System has a right to "reasonable unaccompanied access *** to all areas of the facility which are used by residents or are accessible to residents." The P&A System also has a right to "reasonable unaccompanied access

8

to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect" but only when:

    (i)    An incident is reported or a complaint is made to the P&A System;
    (ii)    The P&A System determines that an incident has or may have occurred; or,
    (iii)    The P&A System determines that there is or may be an imminent danger of serious abuse or neglect of an individual with a mental illness.

42 CFR § 51.42(b)

As to access to residents themselves, the P&A System is only authorized to have access, other than the situations described above, for the purposes of (i) providing information and training on, referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A System, (ii) monitoring compliance with respect to the rights and safety of residents, and (iii) inspecting, viewing and photographing the facilities used by residents or accessible to them. However, that access is only available if the P&A System "**makes every effort to ensure that the parents of minors or guardians of individuals in the care of a facility are informed that the system will me monitoring the facility an may in the course of such monitoring have access to such minor.**" 42 CFR §51.42(c)(emphasis supplied.)

There is no imminent danger of serious abuse or neglect of any of these children. DRO only alleges there is probable cause that abuse or neglect *may* be occurring based upon events that were already independently investigated and the result of those investigations were that no abuse or neglect occurred. DRO also has not provided any indication that its purpose is for presentation or monitoring or that it has notified the parents of these minor children. Absent that evidence DRO has no right to interview the residents of the Buckeye Ranch at random without consent of the minors' guardians or parents.

Lastly, a P&A System must operate within professional cannons of ethics. 42 CFR §51.31. In the event of a dispute, the P&A System is advised to negotiate or mediate towards early resolution in the process. P&A Systems are instructed that "disputes should be resolved whenever possible through non-adversarial process involving negotiation, mediation and conciliation." Rather than attempt a non-adversarial resolution by mutual agreement as requested by The Buckeye Ranch, DRO filed a federal complaint on the same day that it requested to interview the minor at random without the consent of the children's parents. DRO is further instructed by law that "family members should be involved in this process where the individual with mental illness *** is a minor." 42 CFR §51.31. That was not done here. In fact, DRO claims it has no obligation to seek the consent of a parent or even notify them.

Although DRO has certain rights to investigate and monitor the activities of The Buckeye Ranch and the safety of the children in its care, they are not entitled to the unfettered access they seek without regard for the privacy rights of minors and their families.

### IV. Standard of Review for a Temporary Restraining Order

This action seeks to enjoin Defendant Disability Rights Ohio ("Defendant") from exceeding their scope of access to resident minors of the Buckeye Ranch without the consent of the children's parents or legal guardians. Due to DRO's insistent demands to exceed what The Buckeye Ranch believes is the scope of access to these children, The Buckeye Ranch seeks declaratory and preliminary injunctive relief to enjoin DRO from interviewing any minor without parental or a guardian's consent.

The determination of whether to grant a temporary restraining rests on consideration of the following four factors:

(1) whether the movant has demonstrated a strong likelihood of success on the merits;

    (2) whether the movant would suffer irreparable harm;
    (3) whether issuance would cause substantial harm to others; and
    (4) whether the public interest would be served by issuance.

*Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998). [**7] These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (*citing Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). Therefore the purpose of a temporary restraining order is to preserve the status quo. *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). The party seeking a temporary restraining order must establish its case by clear and convincing evidence." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998).

    The PAIMI provides the parameters in which DRO must work in order to fulfill its own statutorily authorized purposes. The Buckeye Ranch has demonstrated above that underlying the authority granted by the PAIMI is a consideration of the due process and privacy rights of the minor children involved and their families. The PAIMI does not give DRO a carte blanche ability to investigate their sole discretion but provides limited investigatory powers in consideration of full disclosure, transparency and consent to the individuals protected under the PAIMI. DRO is required at every turn to demonstrate either consent or probable cause that a child is likely to be in jeopardy. No such probable cause exists here and DRO has not obtained any consents. The Buckeye Ranch has demonstrated it is likely to succeed on the merits of its claims.

DRO seeks to have unfettered and unsupervised access to any child they choose to interview. These children are minors, institutionalized away from home, and often suffer from mental health issues. They are frightened and may be suicidal. Interviews with complete strangers, often with their own agenda, can have unanticipated consequences and the parents and the guardians of these children should be informed of DRO's intentions before any interviews occur. These children have a right to have their parent or guardian informed and these parents and guardians have the right to be informed and weigh in on the process. Mismanagement of this sensitive process can result in irreparable injury to these children and their privacy and that of their families and opens both the DRO and The Buckeye Ranch up to future liability if the rights of the children and their guardians are not considered and preserved.

The court in *Disability Law Center* described the further abuse and harm of allowing a broader interpretation of the PAIMI as argued by the plaintiff therein and DRO herein:

> The extent of the possible abuse that the Center's interpretation would allow is evident in this case. The Center demands that the Academy produce any of the students it requests for interviews. The interviews are to be unlimited. Only the Center's representative would be present. There would be no protections to guard against leading questions or intimidation. The interviewer would have almost unlimited access to records and to the Academy's staff, also without opportunity by the Academy for follow up questions or further clarification. Apparently, the Center would then have its staff and hired experts prepare a report that would become the basis for the Center to take legal action. The Academy would have no opportunity to cross examine, correct, or otherwise provide clarification that would allow a full understanding of the circumstances. The Center would be able to subject the Academy to searches without the constraints imposed by the PAIMI or even any evidence that there was a factual basis for its finding of probable cause. Indeed, the Center's attempt to expand the scope of the investigation to general operational misconduct without identifying the individuals about whom it is concerned or even a factual basis to believe incidents of abuse and neglect are occurring exceeds the carefully crafted limitations imposed in the PAIMI and thus exceeds the authority granted to the Center by the statute.

*Disability Law Center*, at *17-19.

Those same considerations exist here. And, additionally, there is the irreparable harm to the reputation of The Buckeye Ranch should is suffer an onslaught of lawsuits by parents and guardians upset that their minor children or wards were interviewed without their consent.

The public interest is greatly served by preserving the privacy rights of these minor children and their families.

The four factors warranting a temporary restraining order are balanced on the side of The Buckeye Ranch and the minor children in its care. Although DRO has filed its own lawsuit seeking injunctive relief and may argue it has ceased its attempts to access the residents of The Buckeye Ranch thus rendering this motion moot. The Supreme Court recognizes an exception to the mootness doctrine for wrongs "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 55 L. Ed. 310, 31 S. Ct. 279 (1911). This "capable of repetition" requirement is satisfied by the "reasonable expectation" that the same complainant will be subject to similar action in the future. *Globe Newspaper v. Superior Court*, 457 U.S. 596, 603, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982). Likewise, The Buckeye Ranch believes it is reasonable to expect that the DRO will make similar requests in the future. Thus, its motion for temporary restraining order falls under this exception to the mootness doctrine.

V.    **CONCLUSION**

The Buckeye Ranch is not opposed to the DRO's investigation so long as it complies with due process and the boundaries of the law. The Buckeye Ranch reasonably fears that DRO will exceed those boundaries and respectfully requests that a Temporary Restraining Order issue until the merits of these matter can be considered by the Court.

    Respectfully submitted,

    **ISAAC WILES BURKHOLDER**

                                       & TEETOR, LLC

                                       /s/ *Maribeth Meluch*

                                       Maribeth Meluch    (0055903)
                                       mmeluch@isaacwiles.com
                                       Isaac Wiles Burkholder & Teetor, LLC
                                       Two Miranova Place, Ste 700
                                       Columbus, Ohio 43215
                                       p. 614.221.2121
                                       f. 614.365.9516
                                       Attorneys for Plaintiff The Buckeye Ranch, Inc.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true copy of the foregoing Motion for Temporary Restraining Order and the accompanying Complaint was served electronically upon Laura Osseck, attorney for Defendant Disability Rights Ohio, on the 17th day of August, 2018.

                                         /s/ Maribeth Meluch

                                         Maribeth Meluch

**From:** Laura Osseck <losseck@disabilityrightsohio.org>
**Sent:** Thursday, August 16, 2018 10:42 AM
**To:** Robert F. Peters III; Maribeth Meluch
**Cc:** Katherine Yoder; Nick Rees; Tjay Spencer
**Subject:** RE: The Buckeye Ranch

*\*\*\*This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.\*\*\*\*\**
Mr. Peters:

3



EXHIBIT
A

Thank you for your email. We do not need the consent of the parents/guardians prior to interviewing the children in the course of an investigation. See 42 CFR 51.42 (The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect). Residents include minors and adults with legal guardians. 42 CFR 51.42(d) and (e). We intend to complete these interviews over the course of the next week as planned.

We have requested that the facility provide us with the names and contact information for the parents/guardians for all youth at the facility. This information must be provided to us promptly. 42 CFR 51.43. Please have that information for Ms. Yoder when she arrives today to avoid any further delay. Please also include the names of the parents/guardians for children 21093 and 13268 who have been discharged from the facility.

Ms. Meluch may contact me if there are further concerns regarding our access.

Laura Osseck
*Attorney at Law*
**Disability Rights Ohio**
614-466-7264 x 123

**From:** Robert F. Peters III <Robert.PetersIII@buckeyeranch.org>
**Sent:** Thursday, August 16, 2018 10:27 AM
**To:** Laura Osseck <losseck@disabilityrightsohio.org>; Maribeth Meluch <mmeluch@isaacwiles.com>
**Cc:** Katherine Yoder <kyoder@disabilityrightsohio.org>; Nick Rees <Nick.Rees@buckeyeranch.org>; Tjay Spencer <Tjay.Spencer@buckeyeranch.org>
**Subject:** Re: The Buckeye Ranch

Good morning Ms. Osseck.

The Buckeye Ranch is committed to maintaining a safe treatment environment for the children and families we serve and looks forward to working cooperatively with Disability Rights Ohio to ensure our clients are free from abuse, neglect, exploitation and discrimination.

We have received your email requesting to meet with 4 clients today at 2:30pm and we are able to accommodate this request. Tjay Spencer will be your contact person today. He can be reached at 614-357-0498. Tjay will have space for you at the Family Life Center. Once you arrive on campus, make your first 2 right turns and the Family Life Center will be the building on your right. Two of the four clients you have requested to see are available at that time. Clients 21093 and 13268 have been discharged from residential.

Client 18569 is available at 2:30pm but has a mental health group therapy session at 3pm so the meeting will need to be concluded by 2:55 pm or a new time can be arranged. Client 19768 is available to meet at the conclusion of the meeting with client 18569.

As far as meeting with every child in the residential program, we do not believe this is appropriate without the consent of the client's parent or guardian. The Ranch is willing to make contact with the parents/guardians of the residential clients and attempt to obtain consent but would need a week to complete this task.

4

Thank you for your time and attention in this matter.

Robert F. Peters III
Director of Quality Improvement, Compliance Officer, Maintenance Project Manager
The Buckeye Ranch
5665 Hoover Rd.
Grove City, OH 43123
614-395-6235
rpeters@buckeyeranch.org
www.buckeyeranch.org

---

**From:** Laura Osseck <losseck@disabilityrightsohio.org>
**Sent:** Thursday, August 16, 2018 9:14 AM
**To:** Maribeth Meluch
**Cc:** Robert F. Peters III; Katherine Yoder; Nick Rees
**Subject:** RE: The Buckeye Ranch

*\*\*\*This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.\*\*\*\*\**
Maribeth:
Though you mischaracterize our position, a determination of probable cause is within our sole discretion to make – the information I provided to you establishes that very clearly. Your interpretation of our access authority is simply incorrect. We have access to any information that pertains to the individuals, including videos.
Katherine Yoder will be at Buckeye Ranch today at 2:30. Today, she will need to speak to all youth at issue in the requested video footage. Over the course of the next week, she will also need to meet with all youth at the facility.
Please provide us with the name of the Buckeye Ranch staff member Ms. Yoder will need to ask for today as well as the location. She will also need the names and contact information for the parents/guardians of all children in the facility. If the child is in the custody of children services, please specify which county agency. If new children are admitted to the facility during our investigation, please instruct your client to notify us and provide us with the name of the child's parent/guardian. Please provide us with all information your client has that shows that the incidents have been unsubstantiated, including the names of the agencies that completed the investigations. Finally, please provide us with the date or a copy of the facility's most recent survey completed by the Ohio Department of Mental Health and Addiction Services.
Laura Osseck
*Attorney at Law*
Disability Rights Ohio
614-466-7264 x 123

**From:** Maribeth Meluch <mmeluch@isaacwiles.com>
**Sent:** Thursday, August 16, 2018 8:08 AM
**To:** Laura Osseck <losseck@disabilityrightsohio.org>
**Cc:** Robert F. Peters III <Robert.PetersIII@buckeyeranch.org>; Katherine Yoder <kyoder@disabilityrightsohio.org>; 'Nick.Rees@buckeyeranch.org'

5

# Maribeth Meluch

| | |
|---|---|
| **From:** | Maribeth Meluch |
| **Sent:** | Thursday, August 16, 2018 12:25 PM |
| **To:** | losseck@disabilityrightsohio.org |
| **Cc:** | Nick.Rees@buckeyeranch.org |
| **Subject:** | Buckeye Ranch |

Laura, it appears we are not going to agree with your interpretation regarding interviewing residents of the Ranch in general. Can we at least agree on getting an opinion from the Federal Court and delaying these requested interviews until we establish whether you need consent. The Ranch is not trying to thwart legitimate efforts but it also has an obligation to protect the civil rights of its residents and their families. Yes, we understand that your information may be kept confidential but there is more to privacy than keeping records secure. We can file a complaint for declaratory judgment and injunctive relief and get a hearing before the judge in a few weeks.

Sent from my iPhone

1


EXHIBIT B